STATE OF NEW JERSEY, v. SALVATORE PATRIGNANI, FRANCIS FINEMAN AND JACK FINEMAN, DEFENDANTS.

Cumberland County Court
Law Division

Decided January 20, 1961.

*Mr. Edward S. Miller* for City of Millville (*Messrs. Gant & Miller,* attorneys).

*Mr. Samuel Adler,* attorney for the defendants (*Mr. Ivan M. Sherman* on the brief).

CAFIERO, J. S. C.   This is an appeal from a judgment entered in the Municipal Court of the City of Millville, wherein the defendants were convicted of the violation of paragraph 7:5–1 of Ordinance No. 216 adopted July 28, 1922.   This paragraph provides:

> "Doing business on Sunday forbidden; exceptions:· It shall be unlawful for any person or persons to disturb the peace, quiet and good order in the City of Millville on the first day of the week, commonly called Sunday, by vending or exposing for sale any commodities, groceries, fruits, vegetables, clothing, shoes, ice cream, soda water or other soft drinks, articles, goods, wares or merchandise whatsoever; or by keeping open or by conducting or carrying on any manufacturing establishment, shoe cleaning or shoe shining or hat cleaning parlor, or any other mercantile shop, or establishment or place of business of any nature whatsoever."

Defendants maintain and control a coin-operated, self-service, automatic laundromat which is open 24 hours a day, 7 days a week, without the presence of attendants or owners.   It is their contention that the ordinance is not applicable to them for the following reasons':

1. The decision of the Supreme Court in *Two Guys From Harrison, Inc. v. Furman,* 32 *N. J.* 199 (1960), renders

the Millville ordinance void as being in conflict with state policy as declared by *L.* 1959, *c.* 119, *N. J. S.* 2*A*:171–5.8 *et seq.*

2. If the ordinance is not void, it does not apply to defendants' business because:

(a) The service rendered is a necessity and exempt from any Sunday-closing regulation.

(b) The business is not specifically prohibited by the ordinance and cannot be included in the general clause "or establishment or place of business of any nature whatsoever," particularly since coin-operated laundries were not in existence in 1922 when the ordinance was adopted, and are outside the class of specifically banned businesses listed in the ordinance.

(c) The service being fully automatic and unattended, the business does not come within the purview of the Millville ordinance.

It is undisputed that the source of power of a municipality to regulate Sunday activity is found in *R. S.* 40:48–2 enabling municipalities to enact ordinances for the preservation of the public health, safety and welfare of its citizens, and that the object of all Sunday legislation is "to insure a day of quiet, rest and relaxation in the community at large." *Auto-Rite Supply Co. v. Woodbridge Twp.,* 25 *N. J.* 188, 135 *A.* 2*d* 515 (1957).

Prior to the interpretation of *L.* 1959, *c.* 119, *N. J. S.* 2*A*:171–5.8 *et seq.,* by the Supreme Court in *Two Guys From Harrison, Inc., supra,* the purpose of the statute on Sunday closing was to compel a day of rest by blanket prohibition of all activities other than those expressly excepted. The public policy of the State was against all worldly employment on Sunday except works of charity and necessity. *West Orange v. Carr's Dept. Store,* 53 *N. J. Super.* 237 (*Cty. Ct.* 1958). Therefore, the defendants contend that with the passage of *L.* 1959, *c.* 119, (*N. J. S.* 2*A*:171–5.8 *et seq.*), the Legislature placed limitations on municipal legislation; that as a result, municipalities can

only prohibit such specific Sunday activities as interfere with the opportunity of a day of rest, and have no power to compel a day of rest by a blanket ban on Sunday activities such as the Millville ordinance purports to do.

However, we do not believe that this is the finding declared in *Two Guys From Harrison*. The Supreme Court did not therein declare that a municipality is foreclosed from enacting such Sunday closing measures as it believes necessary to protect the health and welfare of the citizens of the community; nor does that decision circumscribe its authority to invoke its police power to such reasonable degree as may be required in its own local area. See *Masters-Jersey, Inc. v. Paramus, 32 N. J. 296* (1960). While the Paramus ordinance which was before the Supreme Court is not similar to the Millville ordinance in the wording used, both were adopted prior to *L.* 1959, *c.* 119, pursuant to the authority delegated by *R. S.* 40:48–2. As was held in the *Masters-Jersey* case, the new policy does not necessarily vitiate existing municipal ordinances.

The defendants also contend that *chapter* 119 permits whatever conduct it does not denounce. But, said the Chief Justice in the *Masters-Jersey* case:

"The premise is unsound. *Chapter* 119 does not affirmatively authorize the continuance of activities beyond its scope. Although, as we pointed out in *Two Guys From Harrison, Inc.*, the Legislature in adopting that statute contemplated that citizen activities beyond the statute's interdiction will continue unscathed insofar as state legislation is concerned, yet there is no evidence of a purpose to bar local government from dealing with an evil it may reasonably find to warrant local attention. A municipality may not authorize what the state statute prohibits in any county in which the statute operates, but chapter 119 does not prevent the municipality from proscribing other activities if there is any evil justifying the exercise of its delegated police power."

We determine that the ordinance was not voided by the passage of *chapter* 119.

We believe that *chapter* 119, although it no longer compels a day of rest, still follows the basic purpose and objective of all Sunday closing legislation, which is to promote

the general welfare and health of the community by prohibiting certain activities on Sunday, and thus protecting society from itself. The Millville ordinance was passed many years ago for such purpose. True, automatic, coin-operated laundromats were unheard of at that time. Conditions, customs and the views of citizens have changed since 1922. But the fact that the ordinance may not be appropriate to conditions now existing, athough it was appropriate to the conditions at the time of its passage, does not affect its validity. 83 *C. J. S. Sunday* § 3(c), p. 802. If the Millville ordinance includes within the scope of paragraph 7:5–1 the prohibiting from keeping open on Sunday of an automatic laundromat, then the defendants have violated the municipal enactment. We believe this premise is compatible with *chapter* 119 in that it "strikes at existing evils which in fact intrude upon the Sunday opportunity for surcease from ordinary tensions." 83 *N. J. L. J.* 359 (1960).

The Millville ordinance prohibits not only the sale of the listed commodities, but also the keeping open, or conducting or carrying on of any manufacturing establishment, shoe cleaning or shoe shining or hat cleaning parlor, or other mercantile shop, or "establishment or place of business of any nature whatsoever."

"The rule of *ejusdem generis* serves as a helpful guide in discovering the legislative meaning. * * * Where general words follow particular words, in an enumeration describing the subject, the general words are construed to embrace only objects similar in nature to those enumerated by the antecedent specific words. *In re Armour's Estate*, 11 *N. J.* 257, 273 (1953) ; *Salomon v. Jersey City*, 12 *N. J.* 379, 389 (1953). The sense of the ordinance is gathered from the whole expression and the meaning of words may be indicated or controlled by those with which they are associated. *Martell v. Lane*, 22 *N. J.* 110, 117 (1956)." *Mayer v. Board of Adjustment, Montclair*, 56 *N. J. Super.* 296, 302 (*App. Div.* 1959).

By applying this rule and by reading the entire section of the ordinance, it must be determined that a clothes washing establishment is comparable in type to those other classes of activity specifically enumerated therein, namely, shoe

cleaning or shoe shining or hat cleaning parlor. Indeed, it may well be considered to be even more of an evil and threat to the public welfare and health sought to be protected by the ordinance because inevitably its facilities would be used by many more citizens of the community.

This brings us to another of defendants' contentions. They declare that the laundromat is a necessity, did not constitute worldly employment, and therefore was exempt from being closed on Sunday; and further, that since it is automatic and unattended, it does not deprive any employee or the proprietors of the business from a day of rest. However, the basic purpose of all Sunday closing legislation, as hereinbefore stated, is to protect all citizens in the enjoyment of repose and quiet on the day thus assigned, and not merely employers and their employees. The objective sought is to provide a day of rest and an escape from the market place for merchant and customer alike. *Auto-Rite Supply Co. v. Woodbridge Tp.*, 25 *N. J.* 188 (1957). Hence, the argument that since neither the owners of the business nor any employee were engaged in the conducting of the business, the opportunity to enjoy a day of surcease from labor was not prevented, is without force. Customers were using the washers and driers offered by the defendants. They did not have the day of rest intended by the ordinance. It matters not that the same work could have been done in their respective homes without question.

"The State, and municipalities by delegation within the limits of the state statute, have power in the interests of the common good to enact all manner of laws reasonably designed for the protection of the public health, welfare, safety and morals, and, although the exercise of such power may cause individual hardship or even limit the freedom of individual action, this does not nullify the law so long as there is some degree of reasonable necessity to protect the legitimate interests of the public and the regulation resulting therefrom is not arbitrary or oppressive. The greater good for the greater number of people must prevail and individual inconveniences, if suffered, are the price paid for living in a well-ordered society. *Gundaker Central Motors v. Gassert*, 23 *N. J.* 71 (1956)." *West Orange v. Jordan Corp.*, 52 *N. J. Super.* 533, 545 (*Cty. Ct.* 1958).

To foster their contentions in this regard, defendants have submitted to our attention the New York cases of *People v. Welt*, 8 *N. Y.* 2*d* 961, 204 *N. Y. S.* 2*d* 189 (*Ct. App.* 1960), and *People on Information of Ferguson v. Andob Corp.*, 206 *N. Y. S.* 2*d* 89 (*Cty. Ct.* 1960). Both of these cases dealt with wholly automatic, self-service laundromat businesses. Defendants were convicted of violating a state law, *section* 2146 of the *Penal Law, McKinney's Consol. Laws, c.* 40, for carrying on a trade on Sunday in violation of the Sabbath laws and, on appeal, the convictions were reversed. *Section* 2146 prohibits "All trades, manufacturers, agricultural or mechanical employments upon the first day of the week * * *." Thus the statute differs from our state law and the Millville ordinance in that it specifically limits the activity to the prohibition of "employments." We cannot be guided by these cases in considering the effect of the Millville ordinance on defendants' business.

The Millville ordinance declares that it shall be unlawful "to keep open or to conduct or carry on." There is a keeping open for business whenever the establishment is kept accessible to those wishing to enter for purposes of traffic, trade or employment and it is immaterial whether a trade is made. 83 *C. J. S. Sunday* § 7, *p.* 807. "To 'keep open' such a place, means providing some way of coming and going sufficient to enable any portion of the public to gather there, and take part in the usual business of the place." *State v. Miller*, 68 *Conn.* 373, 36 *A.* 795 (*Sup. Ct. Err.* 1896). "It is the keeping open for traffic and not the performance of specific acts of business * * * which is forbidden. * * * the offense is complete when there coexists with such physical opening of the establishment as is within the statute a readiness on the part of the proprietor to carry on business in his establishment." 83 *C. J. S. Sunday* § 7, *p.* 808. The defendants do not deny that they operated the laundromat for profit as their business. In so doing, as was stated in *West Orange v. Jordan Corp., supra* [52 *N. J. Super.* 533], "they were in the

market place" and, to paraphrase the wording used therein, the persons using the automatic, coin-operated washers and driers were customers, so that the opportunity for the customers to have a day of rest as intended by the ordinance was interfered with; and whether this interference was an evil to be prevented by the municipality is for the citizens to decide. They have adopted an ordinance which we conclude does encompass defendants' business and prohibit its keeping open on Sunday.

As to defendants' contention that the keeping open of the laundromat on Sunday was a necessity to many people, we apply the test set forth in 83 *C. J. S. Sunday* § 11(*b*), *p.* 813:

"The necessity for the work must be real and urgent; and the test is not whether it must be done at some time, but whether it must be done on Sunday. * * * Necessity in this connection is something more than that which is merely desirable. The mere fact that the performance of [the] act * * * on Sunday is a convenience, or that its non-performance will cause a degree of inconvenience or discomfort * * * is not sufficient to make such act a work of necessity."

It is difficult to believe that any person interested in keeping his clothing clean could not make arrangements to wash them on some other day or night than Sunday. Defendants' establishment is open 24 hours a day. Under these conditions and circumstances it is not feasible to consider it a necessity for an automatic laundromat to keep open on Sunday. See *State v. Fair Lawn Service Center,* 35 *N. J. Super.* 549 (*Cty. Ct.* 1955), reversed on other grounds, 20 *N. J.* 468 (1956).

For the reasons herein stated, the conviction in the municipal court is upheld. Submit judgment.